Losie COUCH, Appellant,

v.

R. Cletus MARICLE, Judge, Clay Circuit Court, Appellee,

and

Commonwealth of Kentucky, Real Party in Interest.

No. 97–SC–1108–MR.

Supreme Court of Kentucky.

Aug. 26, 1999.

Stephan Charles, Manchester, for Appellant.

R. Cletus Maricle, Judge, Clay Circuit Court, Manchester, for Appellee.

A.B. Chandler, III, Attorney General of Kentucky, Dina Abby Jones, Assistant Attorney General, Criminal Appellate Division, Office of Attorney General, Frankfort, for Real Party in Interest.

JOHNSTONE, Justice.

Appellant, Losie Couch, was tried and convicted of the murder of her husband. After her conviction, the trial court granted Couch a new trial on grounds that the prosecution failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). A new trial date was set and Couch petitioned the Court of Appeals for a writ to prohibit her retrial on double jeopardy grounds. The Court of Appeals denied the writ. We affirm.

After the conclusion of Couch's trial, the trial court and trial counsel received a letter from an assistant public advocate. This letter recounted a conversation between the letter's author and Dr. Nichols, who was the medical examiner who performed the autopsy on Couch's husband and testified at Couch's trial. Based on the information contained in the letter, Couch filed a motion for a new trial. A hearing was held on the motion. In the hearing, Dr. Nichols opined that, based on the autopsy and his review of the other evidence provided him, "[t]he hypothetical as framed by the defense is more consistent than the argument offered by the State." The trial court found that the evidence was exculpatory and should have

been disclosed to Couch pursuant to *Brady, supra.*[1]

Couch begins her argument with the faulty premise that "[f]or double jeopardy purposes the trial court's grant of a new trial is indistinguishable from [a] declaration of mistrial...." On the contrary, the trial court's granting Couch a new trial is nearly identical, for purposes of the Double Jeopardy Clause, to an appellate court's reversal of her conviction. As we stated in *Lowe v. Commonwealth*, Ky., 500 S.W.2d 67 (1973):

> The ordering of a new trial before the jury has returned a verdict, or after it has returned a verdict of not guilty, is a horse of a different color from ordering one following a guilty verdict. From the standpoint of a convicted defendant, there is nothing to lose by another trial except for the possibility of receiving a greater penalty at the hands of the jury.

*Id.* at 68.

In a jury trial, jeopardy attaches once the jury is empaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 38, 98 S.Ct. 2156, 57 L.Ed.2d 24, 33 (1978). The reason for attaching jeopardy at this point is to protect the accused's valued right to have his trial completed by a particular tribunal. *Oregon v. Kennedy*, 456 U.S. 667, 671–72, 102 S.Ct. 2083, 72 L.Ed.2d 416, 422 (1982). Consequently, in the event of a mistrial, double jeopardy bars retrial of the accused unless the trial court declared a mistrial because of manifest necessity. *Stewart v. Commonwealth*, Ky., 497 S.W.2d 226, 228 (1973). Of course, if the accused makes the motion for a mistrial, the accused is deemed to have waived his double jeopardy claim. *Kennedy*, 456 U.S. at 673, 102 S.Ct. at 2088, 72 L.Ed.2d at 423. The accused can overcome the presumption of waiver only upon showing that "the conduct giving rise to the order

---

1. While the Commonwealth argues that the trial court erred in finding that the evidence was exculpatory and should have been disclosed to the defense under *Brady*, the Commonwealth has not cross-appealed this ruling. Thus, we conclusively presume that the trial court was correct.

of mistrial was precipitated by bad faith, overreaching or some other fundamentally unfair action of the prosecutor or the court." *Tinsley v. Jackson,* Ky., 771 S.W.2d 331, 332 (1989).

 On the other hand, as a general rule, retrial after reversal of a conviction is not barred by double jeopardy principles. *McGinnis v.. Wine,* Ky., 959 S.W.2d 437, 438 (1998). There are only two exceptions to this rule: (1) "[T]he double jeopardy clause precludes retrial 'once the reviewing court has found the evidence legally insufficient' to support the conviction." *Id.* at 438, quoting *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1 (1978); and (2) "[T]he conviction of a defendant of a lesser-included offense constitutes an acquittal of all higher degrees of the offense. Accordingly, if the conviction of the lesser-included offense is reversed on appeal, the defendant cannot be retried upon any other higher degrees of the offense." *Smith v. Commonwealth,* Ky., 737 S.W.2d 683, 688 (1987), citing *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

Thus, clearly double jeopardy concerns are not the same in the event of a mistrial as they are in the event a conviction is reversed on appeal or set aside upon the granting of a new trial.

 Stripped of her claim that a mistrial and the granting of a new trial are equivalent for purposes of the Double Jeopardy Clause, Couch's argument is reduced to a plea for us to carve a third exception to the general rule that the Double Jeopardy Clause does not bar retrial upon reversal of a conviction. She urges that her retrial is barred on double jeopardy grounds because the Commonwealth Attorney knowingly withheld *Brady* material in bad faith. This argument is disposed of in *Brady* itself.

We now hold that the suppression by the prosecution of evidence favorable to an accused upon request *violates due process* where the evidence is material either to guilt or to punishment, *irrespective of the good faith or bad faith of the prosecution.*

The principle ... is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly.

*Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218 (emphasis added).

Moreover, our case law clearly holds that retrial upon reversal due to prosecutorial misconduct is not barred by double jeopardy:

In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. *As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect e.g.,* incorrect receipt or rejection of evidence, incorrect instructions, or *prosecutorial misconduct.* When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error; just as society maintains a valid concern for insuring that the guilty are punished.

*Hobbs v. Commonwealth,* Ky., 655 S.W.2d 472, 474 (1983), *cert. denied,* 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 745 (1984) (internal citations omitted and emphasis ours). We have no doubt that the prosecutorial misconduct referenced in *Hobbs* embraces the alleged acts of bad faith by the Commonwealth Attorney in the case at bar.

Further, the policy reasons behind allowing retrial to correct trial error support retrial upon reversal of a conviction for prosecutorial misconduct. "It would be a high price indeed for society to pay were

every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *United States v. Tateo,* 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964).

The price that society might have to bear in the wake of prosecutorial misconduct is readily apparent in a case like *Sanborn v. Commonwealth,* Ky., 754 S.W.2d 534 (1988). Sanborn was convicted of a particularly vicious and shocking premeditated murder. *Id.* at 537. We reversed his conviction in part due to the intentional acts of the prosecutor in erasing the taped statements of four witnesses, three of whom testified at trial. *Id.* at 539. We found this destruction of evidence to be a clear violation of *Brady. Id.* at 539. While Sanborn's conviction was reversed, his retrial was not barred by double jeopardy. He was reconvicted upon retrial and again sentenced to death. *Sanborn v. Commonwealth,* Ky., 892 S.W.2d 542 (1994), *cert. denied,* 516 U.S. 854, 116 S.Ct. 154, 133 L.Ed.2d 98 (1995). If Couch were correct in her argument, the prosecutor's misconduct in Sanborn's first trial should have immunized him from further prosecution, which would have been a very high price for society to pay.

The fundamental objective of *Brady* — insuring that Couch receives a fair trial— is satisfied with the granting of a new trial in this case. The basic constitutional guaranty against double jeopardy is not offended by Couch's retrial. Therefore, the Order of the Court of Appeals denying Appellant's petition for writ of prohibition is hereby affirmed.

COOPER, GRAVES, KELLER, and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents by separate opinion, with LAMBERT, C.J., joining that dissent.

STUMBO, Justice, dissenting.

Respectfully, I dissent. I must conclude the retrial of this defendant is barred by the principles of double jeopardy. The majority has correctly noted that the importance of the information withheld from Appellant was such that the earlier conviction could not stand. What it did not emphasize is that the exculpatory information was known to the Commonwealth at the time of trial when Dr. Nichols took the stand, but was only disclosed to the defense after trial by way of a conversation the doctor had with a Public Advocate who was, it seems from the record, not associated with the case at the time of trial.

As the majority notes, retrial is not always barred by prosecutorial misconduct. "A party seeking to prevent his retrial upon double jeopardy grounds must show that the conduct giving rise to the order of mistrial was precipitated by bad faith, overreaching or some other fundamentally unfair action of the prosecutor or the court."[1] *Tinsley v. Jackson,* Ky., 771 S.W.2d 331, 332 (1989).

As noted in Appellant's reply brief, neither the Commonwealth Attorney nor the Attorney General has ever suggested the failure to disclose this important opinion of the medical examiner was anything other than deliberate or intentional. Instead, the state merely contended there was no failure to disclose, an assertion that has been disposed of by the findings of the circuit court. Appellant argues the delay resulting from the Commonwealth's subterfuge has permitted the prosecution to conduct further investigation that has now produced a sort of recantation of Dr. Nichols' testimony, thus throwing doubt on the original exculpatory opinion he expressed privately to the Commonwealth's Attorney during the first trial and officially to the court during the motion for new trial. Appellant insists this investigation constitutes

---

1. While the instant case does not involve the grant of a mistrial, the legal principles are the same.

prosecutorial overreaching of the sort condemned by the Sixth Circuit Court of Appeals in *United States v. Enoch*, 650 F.2d 115, 117 (1981). Therein the Court stated:

> [W]hen a criminal defendant's successful request for mistrial is precipitated by "prosecutorial or judicial overreaching," a subsequent trial on the same charges is barred by the double jeopardy clause. "Prosecutorial overreaching" is misconduct intended to "undermine the integrity of the first proceeding," thereby prejudicing the defendant. It is not necessary that the prosecutor's misconduct have the specific purpose of provoking a defendant's request for mistrial. In instances of "prosecutorial overreaching," the defendant's interests in a single, fair adjudication outweighs the public's interest in conducting a second trial.

*Id.*

Stated differently, the Commonwealth first concealed information vital to the defense, then denied it had done so. Having been found to have concealed the information, the Commonwealth used the delay caused by the proceedings that established the concealment to attempt to negate the testimony it concealed in the first place. Appellant calls this overreaching, and I must agree. I would prohibit retrial of the Appellant herein as a violation of the proscription against double jeopardy.

LAMBERT, C.J., joins this dissent.